IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

| | | |
|---|---|---|
| COMPLAINT OF BELLAIRE VESSEL | ) | |
| MANAGEMENT, LLC, AS OWNER OF | ) | Civil Action No. 5:18-cv-00115 |
| THE M/V CAPT ROBERT G HARRISON | ) | |
| AND BELLAIRE HARBOR SERVICE, LLC | ) | |
| AS CHARTERER OF THE M/V CAPT | ) | |
| ROBERT G HARRISON FOR EXONERATION | ) | |
| OR LIMITATION OF LIABILTY | ) | |

----------------------------------------------------------------

| | | |
|---|---|---|
| IN THE MATTER OF CAMPBELL | ) | |
| TRANSPORTATION CO., INC. AS OWNER, | ) | Civil Action No. 5:18-cv-00138 |
| AND INLAND MARINE SERVICE, INC., | ) | |
| AS OPERATOR AND OWNER PRO | ) | |
| HAC VICE OF THE M/V LOUISE S, | ) | |
| OFFICIAL NO. 513659, FOR EXONERATION | ) | |
| FROM OR LIMITATION OF LIABILITY | ) | |

----------------------------------------------------------------

| | | |
|---|---|---|
| IN THE MATTER OF CAMPBELL | ) | |
| TRANSPORTATION CO., INC. AS OWNER, | ) | Civil Action No. 5:18-cv-00137 |
| OF THE M/V JAMES R. MOREHEAD, | ) | |
| OFFICIAL NO. 1032410, FOR EXONERATION | ) | |
| FROM OR LIMITATION OF LIABILITY | ) | |

----------------------------------------------------------------

MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF COMPLAINANTS,
<u>BELLAIRE VESSEL MANAGEMENT, LLC AND BELLAIRE HARBOR SERVICE, LLC</u>

AND NOW, come Complainants, Bellaire Vessel Management, LLC and Bellaire

Harbor Service, LLC (collectively, "Bellaire"), by and through their undersigned counsel,

and pursuant to Rule 37 of the Federal Rules of Civil Procedure, move to compel the

production of documents wrongfully withheld by The Ohio County Coal Company

("OCCC"), and in support thereof aver as follows:

1.      Bellaire seeks to compel the production of documents improperly withheld by OCCC based on incorrect and unsupported claims of attorney-client privilege.

I.      INTRODUCTION AND FACTUAL BACKGROUND

2.      The above-captioned actions arise out of the breakaway of certain barges from a vessel fleeting facility located on the Ohio River at Boggs Island, Marshall County, West Virginia on the morning of January 13, 2018.

3.      Pursuant to a lease arrangement with Bellaire, the Boggs Island fleeting facility was under the care, custody, management and control of OCCC, and not Bellaire, at the time of the breakaway.

4.      Notwithstanding OCCC's admission that the Boggs Island fleeting facility was under its care, custody, management and control at the time of the breakaway, and not Bellaire's, OCCC attempts to impute liability for the breakaway to Bellaire based on the purported terms of a Towing and Fleeting Agreement between OCCC and Bellaire (the "Towing Agreement," a copy of which is attached as Exhibit 1, at ¶ 9(e), OCCC 429), which states in pertinent part that Bellaire "shall be responsible for any loss or damage to [OCCC's] barges, ordinary wear and tear excluded, which occurs during any period in which . . . the barges are fleeted at . . . Boggs Island Fleeting spaces."

5.      Bellaire disputes the validity and enforceability of this provision of the Towing Agreement for various reasons, and evidence educed in discovery supports Bellaire's contention. Among other reasons, the cited provision appears in the executed version of the Towing Agreement, and but was not included in certain pre-execution and prior versions of the Towing Agreement negotiated by Bellaire and OCCC. *See, e.g.*, February 12, 2015 draft of the Towing Agreement, a copy of which is attached as Exhibit

2, at ¶ 9(e), OCCC 438.  Nor was this provision contained in the prior Towing Agreement with OCCC's predecessor, Consolidation Coal Company (a copy of which is attached as Exhibit 3), which served as the basis of and template for the Towing Agreement between Bellaire and OCCC.  *See* Ex. 3 at ¶ 9(e), OCCC 419-420.

6.      In fact, Bellaire's owner, Robert Harrison, testified at his deposition that the provision was included in the final, executed version of the Towing Agreement without his knowledge or consent.  *See* Transcript of February 17, 2023 Deposition of Robert Harrison, the relevant portions of which are attached as Exhibit 4, at 85:23-93:12.

7.      Given the obvious relevance of this issue to the underlying dispute, Bellaire requested that OCCC produce copies of, among other things, all "preliminary, intermediate and/or final drafts" as well as any notes or other documents relating to OCCC's interpretation of the Towing Agreement.  *See* Defendant's Response to Request for Production of Documents Directed to The Ohio Valley Coal Company, Mon River Towing, Inc., Murray American River Towing, Inc. and Murray American Transportation, Inc., the relevant portions of which are attached as Exhibit 5, at Request Nos. 2 and 4.

8.      However, OCCC objected to this request and withheld multiple responsive documents, claiming that those documents are protected by attorney client privilege.  *Id. See also* OCCC's privilege log (the "Privilege Log"), a copy of which is attached as Exhibit 6.

9.      Notably, every document identified the Privilege Log – at least 30 documents totaling approximately 138 pages – pertains to the parties' negotiation of the Towing Agreement, including entries evidencing that the withheld communications

include e-mails titled "Comparison of Changes in Towing Agreement from Bellaire version." *Id.*

10.     As discussed more thoroughly herein, both OCCC's assertion of the attorney-client privilege and the Privilege Log are deficient in multiple regards.  Bellaire informed OCCC of these deficiencies and requested that OCCC produce the improperly withheld documents.  *See* February 15, 2023 Letter from Leonard Fornella, Esquire counsel for Bellaire, to John S. Sandberg, Esquire, counsel for OCCC, a copy of which is attached as Exhibit 7.

11.     Since that date, undersigned counsel conferred with counsel for OCCC multiple times via telephone calls and/or e-mail regarding this issue.  Counsel for OCCC has failed to cure these deficiencies.

12.     Pursuant to LR Civ P 26.04(b), on June 13, 2023, undersigned counsel for Bellaire provided counsel for OCCC with a draft copy of this Motion.

13.     Since that date, undersigned counsel conferred with counsel for OCCC multiple times via e-mail regarding this issue.  Unfortunately, and notwithstanding Bellaire's repeated requests, OCCC has failed to produce the improperly withheld documents and/or has failed to cure the deficiencies with its Privilege Log.  Bellaire now moves to compel.[1]

II.     ARGUMENT

14.     The foregoing paragraphs are incorporated by reference as though set forth in full herein.

---

[1] Shortly before the announced filing time of this Motion, counsel for OCCC produced four documents listed on the Privilege Log (bates labeled OCCC 348, 380, 389, 390).  Production of these documents suggests that others identified on the Privilege Log must also be produced.

15.     The scope of discovery under the Federal Rules of Civil Procedure is

broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

16.     Courts disfavor assertions of evidentiary privilege because they shield

evidence from the truth-seeking process. *Herbert v. Lando*, 99 S.Ct. 1635 (1979); *In re*

*Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984).

17.     The attorney-client privilege is also to be construed narrowly, and

recognized "only to the very limited extent that . . . excluding relevant evidence has a

public good transcending the normally predominant principle of utilizing all rational means

for ascertaining truth." *Trammel v. United States*, 100 S.Ct. 906 (1980); *United States v.*

*Oloyede*, 982 F.2d 133, 141 (4th Cir.1993) (noting narrow construction of privilege); *In re*

*Grand Jury Subpoenas*, 902 F.2d 244, 248 (4th Cir.1990) (same); *In re Grand Jury*

*Proceedings*, 727 F.2d at 1355 (same).

18.     When attorney-client privilege is claimed, the burden is on the proponent of

the privilege to demonstrate its applicability. *United States v. Jones*, 696 F.2d 1069, 1072

(4th Cir.1982) (citing cases).  "The proponent must establish not only that an attorney-

client relationship existed, but also that the particular communications at issue are

privileged and that the privilege was not waived." *Id.* (citing cases).

19.     As set forth in more detail below, OCCC has failed to meet its burden to demonstrate that the communications identified on the Privilege Log are protected by the attorney-client privilege.

A.   The Privilege Log is Noncompliant with the Local Rules

20.     The foregoing paragraphs are incorporated by reference as though set forth in full herein.

21.     As an initial matter, OCCC failed to comply with this Court's Local Rules when asserting privilege, and therefore fails to meet its burden to confirm the applicability of the attorney-client privilege to the documents identified on the Privilege Log.

22.     LR Civ P 26.04(a)(2)(i)(A)-(B) and 26.04(a)(2)(iii) require that, when privilege is asserted and a document is included on a privilege log, the attorney of the party asserting the privilege provide, among other things, a description of the general subject matter of the document and a certification that the attorney has reviewed each document for which a privilege is asserted.

23.     OCCC's Privilege Log is deficient in its entirety because it does not provide the general subject matter of the withheld document or a certification that OCCC's counsel reviewed the documents as required by LR Civ P 26.04(a)(2)(i).

24.     OCCC's identification of the purported "subject" of the withheld communications on the Privilege Log is insufficient because the "re" line of an e-mail provides no insight into its contents – i.e., whether the contents of the e-mail implicate confidential information conveyed between and attorney and their client or merely communications of unprotected underlying facts.  *See* Ex. 6.

25.     Bellaire therefore requests that OCCC be compelled to produce all documents identified on the Privilege Log because OCCC has failed to meet its burden to confirm the applicability of the attorney-client privilege.

B. <u>Sharing Communications with Third-Parties Waives any Privilege</u>

26.     The foregoing paragraphs are incorporated by reference as though set forth in full herein.

27.     Any disclosure inconsistent with maintaining the confidential nature of the attorney-client privilege – including disclosure to a third-party – waives the attorney client privilege not only as to the specific communication disclosed, but as to all other communications relating to the same subject matter.  *Jones*, 696 F.2d at 1072.  *See also Hawkins v. Stables*, 148 F.3d 379, 384 n. 4(4th Cir. 1998) (citing cases demonstrating that any voluntary disclosure of a communication to a third-party waives the attorney-client privilege).

28.     Many of the communications which OCCC claims are privileged were made to third-parties and therefore cannot be privileged.  For the Court's convenience, Bellaire includes, as Appendix A, a chart in the form of the Privilege Log provided by OCCC but with an additional column titled "Bellaire's Objections" indicating which of the objections identified in this Motion apply to which set(s) of communications improperly withheld by OCCC.

29.     For example, the Privilege Log identifies Jason Rusk, Bob Harrison, Chris Lohri, and Douglas Schwab as third-parties not employed by OCCC.  *See* Privilege Log at p. 6.  However, these individuals are identified on multiple purportedly privileged

communications included on the Privilege Log.  *See* Ex. 6, Privilege Log, at Rows A-C, J-K.

30.     Because these communications were disclosed to third-parties, they cannot be privileged.  *Jones*, 696 F.2d at 1072; *Hawkins v. Stables*, 148 F.3d at 384 n. 4.  *See also* Appendix A at Rows A-C, J-K.

31.     Further, OCCC's repeated failures to identify the general subject matter of the communication over which privilege is asserted, as required by the Local Rules, renders this Court (and Bellaire) unable to determine whether these communications might otherwise be privileged notwithstanding these deficiencies.  *See* Section II(A), *supra*.  OCCC should therefore be estopped from asserting that these communications are privileged based on information not previously disclosed.

32.     Bellaire therefore requests that OCCC be compelled to produce these non-privileged documents, as well as any other communications related to the same subject-matter.

   C. Simply Copying Counsel on a Communication does not Make that Communication Privileged

33.     The foregoing paragraphs are incorporated by reference as though set forth in full herein.

34.     OCCC seemingly claims that multiple communications on the Privilege Log are privileged simply because counsel for OCCC was copied on that communication.  *See* Ex. 6, Privilege Log, at Rows F-G.

35.     OCCC is incorrect.  Simply copying counsel on an email does not make it privileged. *See, e.g., In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003) (stating that merely copying an attorney on an email "is clearly insufficient to establish the privilege");

*In re New York Renu with Moistureloc Prod. Liab. Litig.*, 2008 WL 2338552, at *16 (D.S.C.
May 8, 2008) ("Simply copying the email to the lawyer does not gain a privilege"); *F.C.
Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("What would
otherwise be routine, non-privileged communications between corporate officers or
employees transacting the general business of the company do not attain privileged
status solely because in-house or outside counsel is 'copied in' on correspondence or
memoranda").

36.     The Privilege Log only identifies Andrew Balcar as an attorney for OCCC.
*See* Ex. 6, Privilege Log, at p. 6.  However, Mr. Balcar is on "cc'd" on – and is not a sender
or recipient of – certain communications identified on the Privilege Log. *See* Ex. 6,
Privilege Log, at Rows F-G; Appendix A at Rows F-G.

37.     As such, those communications identified on the Privilege Log which only
copy Mr. Balcar on e-mails between non-attorneys are not privileged.  *See* Ex. 6, Privilege
Log, at Rows F-G; Appendix A at Rows F-G.

38.     Further, OCCC's repeated failures to identify the general subject matter of
the communication over which privilege is asserted, as required by the Local Rules,
renders this Court (and Bellaire) unable to determine whether these communications
might otherwise be privileged notwithstanding these deficiencies.  *See* Section II(A),
*supra*.  OCCC should therefore be estopped from asserting that these communications
are privileged based on information not previously disclosed.

39.     Bellaire therefore requests that OCCC be compelled to produce these non-
privileged documents.

D.  <u>Communications between Non-Attorneys are not Privileged</u>

40. The foregoing paragraphs are incorporated by reference as though set forth in full herein.

41. The "classic test for application of the attorney-client privilege," to which the Fourth Circuit adheres, requires, among other things, that the communication in question be made to "a member of the bar of a court." *Jones*, 696 F.2d at 1072.

42. The Privilege Log only identifies Andrew Balcar as an attorney for OCCC. *See* Ex. 6, Privilege Log, at p. 6. However, Mr. Balcar is not identified as a sender or recipient on multiple e-mail threads included on the Privilege Log. See *Id.* at Rows G, J-L.

43. As such, those communications identified on the Privilege Log as being between non-attorneys are not protected by the attorney-client privilege. *See* Privilege Log at Rows G, J-L; Appendix A at Rows G, J-L.

44. Further, OCCC's repeated failures to identify the general subject matter of the communication over which privilege is asserted, as required by the Local Rules, renders this Court (and Bellaire) unable to determine whether these communications might otherwise be privileged notwithstanding these deficiencies. *See* Section II(A), *supra*. OCCC should therefore be estopped from asserting that these communications are privileged based on information not previously disclosed.

45. Bellaire therefore requests that OCCC be compelled to produce these non-privileged documents.

III. <u>CONCLUSION</u>

46. The foregoing paragraphs are incorporated by reference as though set forth in full herein.

47.     As set forth herein, OCCC has repeatedly refused to comply with the Local Rules, failed to cure the clear deficiencies with its Privilege Log, and failed to satisfy its burden to demonstrate the applicability of the attorney-client privilege to the documents it is withholding.

48.     These numerous failures and deficiencies render this Court (and Bellaire) unable to assess the propriety of the privilege asserted by OCCC and function as a waiver as to arguments by OCCC that these communications are privileged based on previously undisclosed information.[2]

49.     As such, this Court is justified in issuing an order rejecting OCCC's assertion of attorney-client privilege over those documents identified on the Privilege Log and compelling OCCC to produce those documents.[3]

---

[2] Further, to the extent the evidence of record (whether produced in response to this Motion or otherwise), corroborates Mr. Harrison's testimony that the parties' contractual agreement was modified without his knowledge or consent (*see* ¶ 6, *supra*), a fraud exception may apply to negate any claims of attorney-client privilege asserted by OCCC over such evidence.  *See, e.g., Pajak v. Under Armour, Inc.*, 339 F.R.D. 375, 379 (N.D.W. Va. 2021) (citing *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004,* 401 F.3d 247, 251 (4th Cir. 2005) (noting that attorney-client privilege may be lost when a client gives information to an attorney for the purpose of committing or furthering a fraud)).  For the avoidance of doubt, Bellaire does not currently know whether the exception may be applicable here.  However, Bellaire reserves the right to raise such arguments, and any others related thereto, at a later date, including at the time of trial.

[3] Alternatively, and to the extent that this Court determines that OCCC has made a *prima facie* showing of privilege, which Bellaire expressly denies, Bellaire respectfully requests that the Court perform an *in camera* review of the withheld documents to determine the propriety of the privilege asserted by OCCC.

WHEREFORE, Complainants, Bellaire Vessel Management, LLC and Bellaire Harbor Service, LLC, respectfully request that this Court grant the foregoing Motion to Compel in accordance with the attached Order.

BABST, CALLAND,
CLEMENTS & ZOMNIR, P.C.

By /s/  Leonard Fornella
      Leonard Fornella
      WV I.D. No. 7277
      lfornella@babstcalland.com

Two Gateway Center
Sixth Floor
Pittsburgh, Pennsylvania 15222
(412) 394-6533

Attorneys for Complainants/Claimants,
Bellaire Harbor Service, LLC and
Bellaire Vessel Management, LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 23, 2023, true and correct copies of the foregoing

Motion to Compel were served via the ECF electronic filing system upon the following:

John S. Sandberg, Esquire
Casey F. Wong, Esquire
Sandberg Phoenix & von Gontard P.C.
600 Washington Avenue
15th Floor
St. Louis, Missouri 63101-1313
jsandberg@sandbergphoenix.com
cwong@sandbergphoenix.com

Todd M. Powers, Esquire
Megan A. Sullivan, Esquire
Schroeder, Maundrell,
Barbiere & Powers
5300 Socialville Foster Road
Suite 200
Mason, Ohio 45040
tpowers@smbplaw.com
msullivan@smbplaw.com

Joseph R. Blalock, Esquire
Benesch Friedlander
Coplan & Aronoff LLP
44 15th Street
Suite 2
Wheeling, West Virginia 26003
(614) 223-9359
jblalock@beneschlaw.com

Robert C. James, Esquire
Flaherty Sensabaugh Bonasso PLLC
1225 Market Street
P.O. Box 6545
Wheeling, West Virginia 26003
rjames@flahertylegal.com


By____/s/Leonard Fornella_____
Leonard Fornella

{B0143098.1}