FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

| | | |
|---|---|---|
| **COMPLAINT OF BELLAIRE VESSEL MANAGEMENT, LLC**, as Owner of the **M/V CAPT ROBERT G HARRISON** and **BELLAIRE HARBOR SERVICE, LLC** as charterer of the **M/V CAPT ROBERT G HARRISON FOR EXONERATION OR LIMITATION OF LIABILITY** | ) ) ) ) ) ) ) | **Civil Action No. 5:18-cv-00115** <br> Judge Bailey        **(LEAD)** |
| and | | |
| **IN THE MATTER OF CAMPBELL TRANSPORTATION CO., INC.** as Owner, of the **M/V JAMES R. MOREHEAD**, **OFFICIAL NO. 1032410, FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | ) ) ) ) ) ) ) | **Civil Action No. 5:18-cv-00137** <br> Judge Bailey |
| and | | |
| **IN THE MATTER OF CAMPBELL TRANSPORTATION CO., INC.** as Owner, and **CAMPBELL MARINE SERVICE, INC.**, as Operator and Owner of the **M/V LOUISE S. OFFICIAL NO. 513659, FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | ) ) ) ) ) ) | **Civil Action No. 5:18-cv-00138** <br> Judge Bailey |

---

**RESPONDENTS THE OHIO COUNTY COAL COMPANY, MURRAY AMERICAN RIVER TOWING, INC., AND MURRAY AMERICAN TRANSPORTATION, INC.'S, RESPONSE TO BELLAIRE HARBOR SERVICES, LLC'S, MOTION FOR SUMMARY JUDGMENT**

COME NOW, Respondents The Ohio County Coal Company ("OCCC"), Murray American Towing, Inc., and Murray American Transportation, ("the Murray Parties") (collectively "Plaintiffs"), and for their Response to Bellaire Harbor Service, LLC's, Motion for Summary Judgment, state the following:

23358335.v1

## I.   INTRODUCTION

This matter is rooted in the admiralty and maritime jurisdiction of this Court, pursuant to FRCP 9(h). Respondents filed claims in this action and brought claims for damage done to barges while on the navigable waters of the United States. As explained below, Respondents are entitled to a ruling that the insurance provisions of the Fleeting and Towing Agreement between Bellaire Harbor Service, LLC, and The Ohio County Coal Company applies to the Murray entities, the Bellaire is liable for the loss of and damage to the latter's barges that are the subject of the suit and the insurance provisions of the Fleeting and Towing Agreement do not provide coverage for Bellaire.

## II.   UNDISPUTED MATERIAL FACTS

Bellaire Harbor Service, LLC ("Bellaire"), entered a Towing and Fleeting Agreement with The Ohio County Coal Company ("OCCC") in May of 2015, effective January 1, 2015. *See* Towing and Fleeting Agreement, hereinafter **Exhibit 2 to Bellaire's Motion for Summary Judgment**. The Agreement provides, in relevant part, the Towing and Fleeting Agreement is governed by admiralty law and extends to OCCC and third-party barges under OCCC's control. *Id.* at ¶2, 13. The Agreement further provides that Bellaire was to procure and maintain various types of insurance and name OCCC and third-party barges under its control as an additional insured. *Id.* at ¶ 9.

The Fleeting Agreement's last Whereas clause says that the "Agreement establishes the terms and conditions by which Tower (Bellaire) will fleet and tow the Barges." (Emphasis added.) The Agreement then goes on in para. 9(e) to address fleeting. It says:

e. Tenderer will provide Landing owner/Wharfingers Liability Insurance coverages in the amount not less than $10,000,000 per occurrence that will provide for the care, custody and control of Barges being fleeted at the Boggs Island and Lower Mail Pouch fleets by the Tenderer which are placed at these two (2) fleets by the Tenderer prior to the Tower's

<u>attendance to these fleeting locations. All other activity is to be maintained and insured by the Tower, who provides the towboats to maintain[1] these two (2) fleeting locations.</u> The Tower shall also provide Landing owner/Wharfinger Liability Insurance Coverages in the amount of not less than $10,000,000 per occurrence that will provide Liability for the care, custody, and control of all Barges while moored and being fleeted at these two (2) fleeting sites. (Emphasis added.)

Also, the Towing and Fleeting Agreement specifically provides in part at para. 10 the following indemnification provision:

Each party agrees to indemnify and save the other harmless from and against any losses, liabilities, costs, expenses, suits, actions, claims and all other obligations and proceedings whatsoever, including without limitation, all judgments rendered against, and all fines and penalties imposed upon the other party and any reasonable attorney's fees and any other cost of litigation arising out of injuries to persons including death, damage to property to the extent caused by the negligence, willful misconduct or breach of this Agreement by such party and/or its agents.

On January 11, 2018, the M/V James R. Morehead dropped off five barges at the empty Boggs Island fleet, which had eight barges. After picking up a loaded barge, it then moored its tow of seven empty barges and one loaded barge riverside of the 13 barges in the fleet. At least thirteen of these barges were owned by the Murray Parties and under the direction and control of OCCC. The next day the M/V Louise S. arrived at the Boggs Island empty fleet and hovered alongside it.

In the morning of January 13, 2018, the Louise S, its tow and some of the fleet barges broke away. The breakaway resulted in substantial damage to OCCC's barges, and Murray barges under OCCC's control, fleeted at Bellaire's Boggs Island facility, as well as other property.

### III.  APPLICABLE STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Adventis, Inc. v. Consol. Prop.*

---

[1] "Maintain" - to keep in working order by checking or repairing it regularly.

*Holdings, Inc.*, 124 F. App'x 169, 171 (4th Cir. 2005). Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence, or admissions of the absence of evidence, which it believes demonstrates the absence of a genuine issue of material fact. *Id.* A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.*

## IV.   ARGUMENT

### A. Bellaire Failed to Maintain the Boggs Island Fleet with its Towboats.

Bellaire argues that there is no evidence of its failure to do anything to cause this incident.[2] The Fleeting Agreement belies its position.

The Fleeting Agreement's (Ex. 2 to Bellaire's Motion) last Whereas clause says that the "Agreement establishes the terms and conditions by which Tower (Bellaire) will <u>fleet</u> and tow the Barges." (Emphasis added.)  The Agreement then goes on in para. 9(e) to address fleeting.  It says:

> e.   Tenderer (OCCC) will provide Landing owner/Wharfingers Liability Insurance coverages in the amount not less than $10,000,000 per occurrence that will provide for the care, custody and control of Barges being fleeted at the Boggs Island and Lower Mail Pouch fleets by the Tenderer which are placed at these two (2) fleets by the Tenderer <u>prior to the Tower's attendance to these fleeting locations. All other activity is to be maintained and insured by the Tower, who provides the towboats to maintain</u>[3] <u>these two (2) fleeting locations.</u> The Tower shall also provide Landing owner/Wharfinger Liability Insurance Coverages in the amount of not less than $10,000,000 per occurrence that will provide Liability for the care, custody, and control of all Barges while moored and being fleeted at these two (2) fleeting sites. (Emphasis added.)

---

[2] Page 9, Section III B.
[3] "Maintain" - to keep in working order by checking or repairing it regularly.

Per these terms, after the Tower's attendance at the Boggs Island Fleet "[a]ll other activity is to be maintained and insured by the Tower, who provides the towboats to maintain these two (2) fleeting locations."  Twice the language says that Bellaire, as Tower, will maintain the fleet. The paragraph also implies that Bellaire after its attendance at the Fleet had the "care, custody and control" of all Barges.

Bellaire admits it attended the fleet on the late afternoon of January 12. Bellaire Memorandum in Support at p.10.  Accordingly, it was required to provide towboats and maintain the fleet.  It did neither.

The Court should deny Bellaire's Motion for Summary Judgment as to OCCC and the Murray Parties' negligence claims.

### B. The Additional Assured Provision of the Parties' Towing and Fleeting Agreement Extends to Murray American River Towing, Inc., and Murray American Transportation, Inc.

Bellaire alleges the Murray Parties do not have standing to raise their breach of contract claim, as they are not privy to the Towing and Fleeting Agreement. Bellaire relies solely on West Virginia law to support its argument. However, this is a maritime matter, which is rooted in federal law. Likewise, the Fleeting Agreement specifically states it is governed by admiralty law. **Exhibit 2, supra** at ¶2, 13. Therefore, federal law controls the issues, including the rights of third-party beneficiaries. *Sundance Cruises Corp. v. Am. Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir. 1993); *Middle East Engineering & Dev. Co. v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, 675 F. Supp. 855, 857 (1987) ("federal courts apply state law in maritime cases where state law vindicates a state concern that federal admiralty law leaves unaddressed").

23358335.v1

Under federal common law, a party is granted third-party beneficiary status if "the [underlying] contract reflects the express or implied intention of the parties to the benefit of the third party." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 706 citing *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (1994). "[T]he intent of the parties to the contract is 'the cornerstone of a claim for third-party beneficiary status." *Id.* citing *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005). "[T]hird-party beneficiary status is not reserved for those parties who benefit expressly under a given contract," and the intent may be determined by the contract itself, as well as the circumstances surrounding its formation. *Id.* citing *Flexfab*, 424 F.3d at 1260; *U.K. Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165, 173. Lastly, this Court held:

> . . . the contract does not need to be made only for the benefit of the third-party beneficiary; rather, a party may be a third-party beneficiary to a contract if the contract was made and intended to be for the benefit of a class of persons definitely and clearly shown to come within the terms of the contract and the third-party beneficiary party is a member of that class.

*Rogers v. Tug Hill Operating, LLC*, 598 F. Supp. 3d 404, 427 (citing *Slone v. State Auto Prop. & Cas. Ins. Co.*, 2021 U.S. Dist. LEXIS 9648, 2021 WL 190938 (S.D. W.Va. Jan. 19, 2021).

In the morning of January 13, 2018, the night of the incident, OCCC was utilizing and otherwise controlling barges owned by Murray American River Towing, Inc., Inc., and/or Murray American Transportation, Inc. ("Murray Parties"), when it fleeted the barges at the Boggs Island facility. **Exhibit C to the OCCC/Murray Motion for Summary Judgment,** ¶ 5. Sixteen of the Murray Parties' barges were dislodged from the fleet by the subject incident, seven of which sank.

The subject Fleeting Agreement by its terms applies to "barges owned by Tenderer (OCCC) or owned by third parties under Tenderer's control." **Exhibit 2**, ¶ 2. There is no ambiguity as to whether the Agreement was intended to benefit Murray American River Towing, Inc., and

23358335.v1

Murray American Transportation, Inc. ("Murray Parties"), as the barges were being utilized by OCCC, under OCCC's control, and fleeted at the Boggs Island facility at the time of the incident. The fact that the Murray Parties are not specifically named in the Agreement is irrelevant, as the express language places the Parties squarely within the class of entities that the Agreement was intended to benefit.

Under the Agreement, Bellaire was to procure insurance for OCCC and Barges owned by third parties under its control. The additional insurance provision extended to the Murray Parties' barges under OCCC's control. By failing to procure the required insurance, the Murray Parties sustained significant damages in the form of unnecessary legal fees, payments for property damages, and other costs associated with being unduly underinsured.

The Court should deny Bellaire's Motion for Summary Judgment as to Bellaire's request for limitation of the Murray Parties' standing as a third-party beneficiary.

### C. Bellaire's Claim for Coverage under Paragraph 9(e) is Not Supported by the Language of the Paragraph[4].

Bellaire claims that it is entitled to $10 million in insurance coverage under paragraph 9(e) of the Fleeting Agreement which states, in part:

> "Tenderer will provide Landing owner/Wharfingers Liability Insurance coverages in the amount, not less than $10,000,000 per occurrence, that will provide for the care, custody and control of Barges being fleeted at the Boggs Island by the Tenderer which are placed at these two (2) fleets by the Tenderer prior to the Tower's attendance to these fleeting locations."

---

[4] Page 13 of its Memorandum of Law, Section D.

Nowhere does this paragraph say that this coverage was intended to cover Bellaire. The coverage as stated was intended for the Barges being fleeted, all of which were OCCC barges or ones under its control.

Regardless OCCC had two insurance policies that provided $10 million in coverage for incidents at the fleet. See Ex. E. to OCCC's Motion for Summary Judgment, which provided $5 million in coverage and Ex. G attached, which provided an additional $5 million in coverage.[5] Exhibit E, page 129 contains the terms of the Landing Owner's Liability Insurance, the type of liability coverage called for by paragraph 9(e).

Reading paragraph 9(e) in whole, it is apparent that the plain meaning of the provision is that there should be liability coverage for the time period when OCCC drops off barges until such time as Bellaire gets a boat over to the fleet after which "all other activity is to be maintained and insured by [Bellaire]" and it then goes on to say that thereafter Bellaire should provide the same type of liability coverage for the fleet as OCCC was supposed to provide. Nowhere does the paragraph state or suggest that the required coverage was for the other party.

The Court should deny Bellaire's Motion for Summary Judgment as to Bellaire's claim for coverage under paragraph 9(e) of the Fleeting Agreement.

## V. CONCLUSION

It is undisputed Bellaire failed to maintain the Boggs Island Fleet with its towboats, the Murray Parties' have standing to raise their third-party beneficiary claims under federal common

---

[5] Exhibit G was just recently produced. It was not produced in OCCC's initial Rule 26 disclosures in that the claims did not exceed the $5 million limits of the produced Exhibit E. Bellaire never asked OCCC whether it had additional coverage in its discovery requests.

law, and Bellaire's claim for coverage under paragraph 9(e) of the Towing and Fleeting Agreement is meritless. Therefore, Bellaire's motion for summary judgment should be denied.

WHEREFORE, Respondents, The Ohio County Coal Company, Murray American River Towing, Inc., Murray American Transportation, Inc., pray that this Honorable Court denies Bellaire Harbor Service, LLC's, Motion for Summary Judgment, and for all other relief that may be deemed just and proper.

                            Respectfully submitted,

By:     /s/ Joseph R. Blalock
Joseph R. Blalock (WV I.D. #12090)
Benesch, Friedlander, Coplan & Aronoff, LLP
44 15th Street, Suite 2
Wheeling, WV 26003
614.223.9395
614.223.9330
jblalock@beneschlaw.com

-and-

John S. Sandberg (admitted *pro hac vice*, PHV-36372)
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
jsandberg@sandbergphoenix.com

*Attorneys for Plaintiffs, The Ohio County Coal Company, Murray American River Towing, Inc., Murray American Transportation, Inc., And Mon River Towing, Inc.*

**Certificate of Service**

    I hereby certify that on the 28th day of July, 2023, I served the foregoing The Ohio County Coal Company, Murray American River Towing, Inc., and Mon River Towing, Inc's. RESPOSNSE TO BELLAIRE HARBOR SERVICES LLC'S MOTION FOR SMMARY JUDGMENT on all parties and counsel of record with the Clerk of Court using the CM/ECF system which will provide notification of such filing to all CM/ECF participants.

By:    /s/ Joseph R. Blalock
Joseph R. Blalock (WV I.D. #12090)
Benesch, Friedlander, Coplan & Aronoff, LLP
44 15th Street, Suite 2
Wheeling, WV 26003
614.223.9395
614.223.9330
jblalock@beneschlaw.com

-and-

John S. Sandberg (admitted *pro hac vice*, PHV-36372)
SANDBERG PHOENIX & von GONTARD P.C.
600 Washington Avenue - 15th Floor
St. Louis, MO 63101-1313
314-231-3332
314-241-7604 (Fax)
jsandberg@sandbergphoenix.com

*Attorneys for Plaintiffs, The Ohio County Coal Company, Murray American River Towing, Inc., Murray American Transportation, Inc., And Mon River Towing, Inc.*